AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
Aug 26 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| BROOKE CAMPBELL SOLIS | ) | Case No. 3-20-mj-71196 MAG |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 2, 2019 and July 24, 2019 in the county of Santa Clara in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Count One: Wire Fraud |
| 18 U.S.C. § 1343 | Count Two: Wire Fraud |
| | Max. Penalties: Counts One and Two (each count): 20 years imprisonment; $250,000 fine (or 2X gain or loss, whichever is greater); 3 years supervised release; $100 special assessment |

This criminal complaint is based on these facts:

The attached affidavit of FBI Special Agent Joel Seaton.

☑ Continued on the attached sheet.

/s/ Joel Seaton
*Complainant's signature*

Approved as to form  /s/
AUSA Robin L. Harris

Joel Seaton, Special Agent, FBI
*Printed name and title*

Sworn to before me by telephone.

Date: 08/24/2020

*Judge's signature*

City and state: San Francisco, California

Hon. Sallie Kim, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF JOEL SEATON

I, JOEL SEATON, Special Agent of the Federal Bureau of Investigation, being duly sworn, do declare and state:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of § 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, § 2516.

2. This Affidavit is made in support of a two count Criminal Complaint charging BROOKE CAMPBELL SOLIS with Wire Fraud in violation of 18 U.S.C. § 1343.

3. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause to believe the defendant BROOKE CAMPBELL SOLIS committed two counts of wire fraud, I have not included each and every fact known to me that supports probable cause for the aforementioned violations of federal criminal law. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and summons for the individual listed in this Affidavit.

4. In addition, where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

### AGENT BACKGROUND

5. I am a Special Agent (SA) of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been so employed since September, 2014. I am currently assigned to the San Francisco Field Office of the FBI, and I investigate White Collar Crime cases. I successfully completed the 21 weeks of New Agent Training at the FBI Academy in Quantico, Virginia, in January 2015. During that time, I received training in legal statutes and

1

procedures, financial investigations, money laundering techniques, asset identification, forfeiture and seizure, physical surveillance, confidential source management, and electronic surveillance techniques.

6. Prior to my employment with the FBI, I was a software solutions architect, providing technical software implementation. I earned a Master's Degree in Business Administration from the University of Washington as well as Bachelor of Science Degrees in Economics and Political Science from Santa Clara University.

## APPLICABLE LAW

7. To prove a violation of 18 U.S.C. § 1343 (Wire Fraud), the government must show:

   a. First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

   b. Second, the statements made or facts omitted as part of the scheme were material, that is they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

   c. Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

   d. Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out, or attempt to carry out an essential part of the scheme. See Ninth Circuit Instruction 8.124.

## STATEMENT OF PROBABLE CAUSE

8. The following facts lay out a portion of the fraud scheme that this investigation has revealed thus far. The subject is BROOKE CAMPBELL SOLIS (hereafter SOLIS), a 49-year-old female living in Austin, Texas. SOLIS is an attorney, who is licensed to practice law in the state of California and is currently on "inactive" status. From January, 2018, until March, 2019, SOLIS was employed as General Counsel for a company, referred to herein as

COMPANY 1. From March, 2019, until July 22, 2019, SOLIS was employed as Chief Business Officer for COMPANY 1. COMPANY 1 is a financial technology company, incorporated in the State of Delaware in January, 2018, and registered with the California Secretary of State in February, 2019. COMPANY 1's principal executive office is in San Francisco, California. Throughout the period of SOLIS's employment at COMPANY 1, SOLIS was permitted to work remotely from her home in Austin, Texas.

9. This investigation has revealed that SOLIS abused her position and privileges at COMPANY 1 to embezzle and divert funds from COMPANY 1 to various shell companies and entities controlled by SOLIS and her husband for SOLIS's direct benefit. As is set forth below, one of the methods SOLIS used to further her scheme to defraud COMPANY 1 included the use of fraudulent invoices requesting payment from COMPANY 1 to a shell company controlled by SOLIS named The Paralegal Group LLC. Another method used by SOLIS to further her scheme involved the abuse of what were called "super administrative privileges." These super administrative privileges, which were granted by COMPANY 1 to allow SOLIS to fulfill her legitimate job responsibilities at COMPANY 1, enabled SOLIS to both submit and approve payment for expenses, which would then be reimbursed by COMPANY 1 with no review or oversight from other COMPANY 1 employees or executives. Through the course of my investigation, I have learned that SOLIS's embezzlement from COMPANY 1 continued after SOLIS's departure from COMPANY 1 in July, 2019.

<u>Embezzlement and Laundering through The Paralegal Group LLC</u>

10. The Paralegal Group LLC (hereafter The Paralegal Group) was incorporated in the State of Delaware in May, 2019. The Limited Liability Company Agreement for The Paralegal Group lists SOLIS as the sole member. I have reviewed records from GoDaddy, an internet domain registration service. These records reflect that, on May 29, 2019, SOLIS registered the internet domain paralegal-group.com. SOLIS is listed on the GoDaddy records as the owner of this internet domain.

11. On May 28, 2019, a Capital One Bank account in the name "Paralegal Group

3

LLC" was opened. The mailing address on the Capital One Bank account statements for The Paralegal Group LLC was SOLIS's home address in Austin, Texas.

        12. On June 2, 2019, a consulting agreement between The Paralegal Group and COMPANY 1 was electronically signed using the service HelloSign, an online service enabling companies and individuals to sign legally binding documents electronically. SOLIS used her COMPANY 1 corporate email address to sign the consulting agreement on behalf of COMPANY 1 via HelloSign.

        13. My investigation, which included reviewing records from HelloSign and emails from COMPANY 1, revealed that SOLIS also used a name, referred to herein as "R.D.," to sign the consulting agreement on behalf of The Paralegal Group. In doing so, SOLIS used the email address R[redacted]@paralegal-group.com. The investigation to date indicates that "R.D." is, in fact, SOLIS, based on the following facts. The internet domain for "R.D.'s" email account, paralegal-group.com, was, as described above, registered by SOLIS. "R.D.'s" HelloSign account was created on June 2, 2019, the same day the consulting agreement between COMPANY 1 and Paralegal Group was signed. The only time "R.D.'s" HelloSign account was ever logged into was on June 2, 2019, on three occasions, all in one fifteen-minute window surrounding the electronic signing of the consulting agreement. All of "RD's" logins came from a single IP address. During that same fifteen-minute window, SOLIS logged in to HelloSign using her COMPANY 1 email address and signed the consulting agreement on behalf of COMPANY 1 from this same IP address, indicating SOLIS and "R.D." were using the same computer. The electronic audit trail from HelloSign, which I have reviewed, likewise indicates SOLIS and "R.D." both signed the consulting agreement from the same IP address within 41 seconds of each other. Moreover, the payment method on file for "R.D.'s" HelloSign account is an American Express credit card ending in the four digits 9008. HelloSign lists the cardholder's name as "Brook [sic] Solis." My review of documents from American Express show that SOLIS holds an American Express credit card ending in the four digits 9008. On July 1, 2019, (a delay consistent with a 30-day free trial, which was being promoted on HelloSign's website), SOLIS's

4

American Express credit card ending in 9008 reflected a $156 charge from HelloSign.

14. Additionally, SOLIS's signing of this agreement on behalf of COMPANY 1 was itself a violation of SOLIS's employment agreement with COMPANY 1 and was not permitted. SOLIS's employment agreement, signed by SOLIS and dated February 22, 2018, reads, in part, "Neither [SOLIS], nor any partner, agent or employee of [SOLIS], has authority to enter into contracts that bind [COMPANY 1] or create obligations on the part of [COMPANY 1] without the prior written authorization of [COMPANY 1]."

15. Bill.com is a cloud-based software service provider of financial operations services for small and mid-size companies. The Bill.com platform allows users to create bills and invoices, send bills and invoices, and receive payment. At all relevant times, data about customer transactions for Bill.com was stored on a computer server located in Sunnyvale, California, and was backed up to a second server located in Scottsdale, Arizona. Therefore, all transactions facilitated by Bill.com necessarily involved wire communication in the Northern District of California and an interstate wire communication from California to Arizona.

16. On June 2, 2019, the same date the consulting agreement was signed, SOLIS submitted an invoice for $9,222.50 from The Paralegal Group to COMPANY 1 via Bill.com. This invoice, which is dated May 31, 2019, before the consulting agreement came into existence, supposedly reflected 52.7 hours of work by The Paralegal Group for COMPANY 1. Payment history records from Bill.com, which I have reviewed, reflect that the payment request associated with this invoice was created by SOLIS on June 2, 2019, within hours of the consulting agreement being signed. On June 11, 2019, COMPANY 1 paid this invoice using Bill.com. This payment from COMPANY 1 to The Paralegal Group was electronically deposited into The Paralegal Group's Capital One Bank account, which was controlled by SOLIS.

17. I have reviewed numerous other invoices that were submitted by SOLIS for services supposedly provided by The Paralegal Group to COMPANY 1 for the time period from June 2, 2019, through July 17, 2019. All of these invoices from The Paralegal Group reflect The Paralegal Group received mail at a P.O. Box in Austin, Texas. I learned from records I reviewed

5

in the course of this investigation that the P.O. Box listed on these Paralegal Group invoices was rented by SOLIS and has been rented by SOLIS since approximately October, 2013.

18. From the time The Paralegal Group's Capital One Bank account was opened through the end of August, 2019, only $648.05 was deposited into The Paralegal Group's Capital One Bank account that did not come directly from COMPANY 1. During this same period of time, $34,422.50 of COMPANY 1 funds was paid to The Paralegal Group based upon invoices that were submitted to COMPANY 1 by SOLIS through Bill.com. Put another way, over 98% of the total deposits into The Paralegal Group's Chase Bank account came from COMPANY 1.

19. There is no evidence The Paralegal Group ever provided any services to COMPANY 1 and The Paralegal Group's Capital One Bank account did not show payroll, rent, or other expenses normally associated with running a true business. Instead, the funds that were deposited into The Paralegal Group's Capital One Bank account as a result of payments electronically made by COMPANY 1 through Bill.com were depleted for expenses and purchases directly attributable to SOLIS, including: approximately $19,081.25 in credit card payments to pay debts accumulated on personal credit cards held by SOLIS and her husband; approximately $4,000 in cash ATM withdrawals from locations in Austin Texas, where SOLIS resides, and in San Pedro, Belize; and $8,935 in "purchases" from Juice Dive. I have learned through this investigation that Juice Dive is a company incorporated in Texas in 2019 and physically located in San Pedro, Belize. Texas Secretary of State filing documents for Juice Dive, which I have reviewed, name SOLIS's husband as the "organizer" of Juice Dive and list Juice Dive's address as SOLIS's residential address in Austin, Texas. The Texas Secretary of State Juice Dive filing documents also list two Managers: SOLIS and her husband. According to the documents I reviewed, these two individuals are the sole Managers of Juice Dive.

<u>Fraudulent Expense Reimbursement to SOLIS through Expensify</u>

20. Buntoppers LLC is a Texas corporation registered in August, 2015. I have reviewed the registration documents for Buntoppers LLC. The registered agent for Buntoppers on the incorporation documents is listed as "Brooks [sic] Solis" at SOLIS's home address in

6

Austin, Texas.

21.     On August 1, 2016, SOLIS opened a business checking account ending in 2454 at Wells Fargo Bank in the name Buntoppers LLC. SOLIS was the sole signer on this account.

22.     Expensify is a provider of business and personal expense management software. Expensify's service can be accessed via the internet or mobile phone application. At all relevant times, data about customer transactions facilitated by Expensify was stored on computer servers located in three different computer data centers, located in: Santa Clara, California; Los Angeles, California; and Reno, Nevada. Data for all transactions processed by Expensify was stored in all three data centers. Therefore, all transactions facilitated by Expensify necessarily involved wire communication in the Northern District of California and interstate wire communication.

23.     On July 24, 2019, two days after ending her employment with COMPANY 1, SOLIS submitted a personal expense of $4,575, via Expensify, for 61 days of "Jackson and Oliver boarding" at a dog boarding company, referred to herein as WDB. SOLIS, who, at the time, still had access to COMPANY 1's Expensify account, then used her super-administrative privileges to self-approve the dog boarding expense less than one minute after she submitted the payment request. On July 30, 2019, payment of $4,575 was electronically deposited into SOLIS's Buntoppers LLC Wells Fargo Bank account, facilitated by Expensify. The purported invoice submitted with this request lists no address, phone number, or any other identifying information for WDB, so whether it is a true company cannot be determined. However, an open-source internet search did not find any businesses in Austin, nor anywhere else in Texas, matching the name WDB. SOLIS attempted to evade detection for the improper transfer of funds by self-approving the expense after she had already left her employment at COMPANY 1, taking advantage of her knowledge that COMPANY 1 had not yet terminated SOLIS's access to the Expensify software program.

## **CONCLUSION**

24.     Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that BROOKE CAMPBELL SOLIS committed

two counts of Wire Fraud in violation of 18 U.S.C. § 1343.

    a. Count 1, on June 2, 2019 SOLIS knowingly participated in a scheme or plan to defraud COMPANY 1 of money and property and acted with an intent to deceive and cheat by making material misstatements and omissions and used and caused an interstate wire in furtherance of a scheme to defraud COMPANY 1;

    b. Count 2, on July 24, 2019, SOLIS knowingly participated in a scheme or plan to defraud COMPANY 1 of money and property and acted with an intent to deceive and cheat by making material misstatements and omissions and used and caused an interstate wire in furtherance of a scheme to defraud COMPANY 1.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

          /s/ *Joel Seaton*
          JOEL SEATON
          Special Agent
          Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P 4.1 and 4(d) on this 24th day of August, 2020

_____
HONORABLE SALLIE KIM
UNITED STATES MAGISTRATE JUDGE